## THE U. S. 219.

### No. 23.

District Court, E. D. Pennsylvania.

Nov. 30, 1937.

Leslie C. Krusen, of Philadelphia, Pa., for libelant.

Conlen LaBrum & Beechwood and James S. Benn, Jr., all of Philadelphia, Pa., for respondents.

MARIS, District Judge.

This is a libel filed by Colonna's Shipyard, Inc., hereinafter called Colonna, against the Oil Barge U. S. 219, hereinafter called the barge, and Steel Oil Transport Corporation, hereinafter called Steel, as owner of the barge, to recover the sum of $877.50, being the cost of certain repairs made to the barge. The barge was not seized by the marshal, but instead Steel, as claimant, filed a stipulation in the sum of $1,000 with Indemnity Insurance Company of North America, as surety. From the evidence I make the following

Special Findings of Fact.

On April 18, 1936, the barge was demised by Steel to Chesapeake Oil Transport Company, hereinafter called Chesapeake, by the following agreement or charter party:

"Chesapeake Oil Transport Company,
"Attention of: Geo. E. Rogers, Pres.
"Foot of Dock Street,
"Baltimore, Md.
"Gentlemen:

"It is hereby mutually agreed that:

"Oil barge 'U. S. 219' is delivered to your account for the sum of $400. (Four Hundred Dollars). The second payment of $400.00 is due to be paid on May 25th, 1936 and every month thereafter on the 25th day of that month for as long as you wish to charter barge. Should charterer decide to terminate the charter and not purchase the barge, the barge is to be returned to Philadelphia at the expense of the charterer.

"Charterer is to insure at their expense the barge 'U. S. 219' for all Marine risks and explosion in a responsible and acceptable insurance company to the owners, for a valuation of $8,000. (Eight thousand dollars). Charterer is also to carry at their expense all insurance necessary on cargoes, crew, longshoremen, etc.

"If the sale price of $8,000.00 is agreed upon at any time by the charterer, then the owners agree to apply all charter money toward purchase price and the charterer further agrees to pay the owners at the rate of $500.00 per month on the balance due until the full purchase price of $8,000.00 has been made.

"Charterer agrees that barge is in seaworthy condition upon the time of delivery to their account and agrees to return barge in the same condition, ordinary wear and tear excepted.

"Accepted by Charterer
        "Chesapeake Oil Transport Company
        "By: G. E. Rogers,
                "President
"Accepted by Owners
        "Steel Oil Transport Corp.
        "By: John M. Wheaton
                "President
"April 18, 1936.
"Philadelphia, Penna.
"Witness
"John H. Fisher."

The barge was placed in the service of Chesapeake transporting road oils from Norfolk to other points in the state of Virginia over the waters of the Chesapeake Bay. It was placed in tow of the tug Frances chartered by Chesapeake and the chief engineer of the tug, William W. Cherry, was placed in charge of the barge by Chesapeake.

On September 12, 1936, while the barge was en route from Kinsale to Norfolk she developed serious leaks in her forepeak and upon arrival at the latter port it was found impossible to load her without repairs. Cherry thereupon telephoned to George E. Rogers, president of Chesapeake, and suggested obtaining three bids for the necessary repairs. Rogers in turn telephoned to John H. Fisher, secretary of Steel, who approved the procedure. Cherry thereupon took three bids, accepted that of Colonna, which was the lowest, took the barge to Colonna's shipyard, and directed Colonna to proceed with the repairs.

While these repairs were being made Louis D. Steel, treasurer of Steel, and Fisher, its secretary, visited Colonna's shipyard, inspected the barge on the railway and ordered additional work to be done, consisting of cleaning and painting the barge. This order was given by them to Colonna through Cherry. At this visit neither of them protested against the other work which was being done by Colonna pursuant to Cherry's order, nor did they indicate to Colonna that Steel would not be responsible for it.

The repairs in question consisted of placing doubling plates at the light water line at bow and stern and repairing the steering gear and rudder. The doubling plates were necessary in order to reinforce deteriorated plates at these points which had worn very thin and in many places had

holes clear through them. The barge was an old converted vessel and this condition was solely the result of ordinary wear and tear.

Colonna made the repairs upon the credit of the barge and its charge for the work was $877.50 which was a fair and reasonable charge. Shortly after the repairs were completed on September 22d bills were sent by Colonna to Steel and were entered by Steel as a liability upon its ledger but they have never been paid. At the same time Colonna billed Steel $160 for the cleaning and painting job and this bill was paid by Steel on January 18, 1937.

### Discussion.

■ Upon these facts Colonna claims a maritime lien against the barge and a decree against Steel for the amount of the repairs. It will be observed that the agreement under which Chesapeake had possession of the barge was a bare boat demise charter and contained no restriction upon the right of the charterer to create liens against the vessel for necessary repairs. It undoubtedly placed the charterer in possession of the barge as owner pro hac vice.

Subsections P, Q, and R of the Ship Mortgage Act 1920 (section 30, Act June 5, 1920), 46 U.S.C. §§ 971, 972 and 973, 46 U.S.C.A. §§ 971–973, contain the following pertinent provisions:

Subsection P: "Any person furnishing repairs * * * to any vessel * * * upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Subsection Q: "The following persons shall be presumed to have authority from the owner to procure repairs * * * the managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted."

Subsection R: "The officers and agents of a vessel specified in subsection Q, section 972, shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

In the light of this statute, the charter agreement containing no contrary provision, it is clear that Chesapeake as owner pro hac vice had full authority to incur a lien against the barge for necessary repairs. The evidence established that Cherry was placed in charge of the barge by Chesapeake and was expressly authorized by it to procure the repairs. Since Chesapeake was in fact authorized to incur liens it is clear that there was no duty upon Colonna to inquire as to the authority of Chesapeake or Cherry, its agent in charge of the barge, to order repairs made at the expense of the vessel. South Coast S. S. Co. v. Rudbach (The South Coast), 251 U.S. 519, 40 S.Ct. 233, 64 L.Ed. 386; The Golden Gate (C.C.A.) 52 F.2d 397.

It follows that a maritime lien arose in favor of Colonna for the cost of the repairs made to the barge at Chesapeake's direction through its agent, Cherry.

■ Steel does not seriously controvert these propositions but urges that Colonna in fact waived its right to a lien and in making the repairs relied exclusively upon the credit of Chesapeake, the charterer. I am unable to find this to be the fact, however. On the contrary it appeared that while these repairs were being made, Colonna at Cherry's direction did certain cleaning and painting work, which it also billed to Steel. So far as appears both repair jobs were undertaken by Colonna under substantially the same circumstances upon orders from Cherry. It is obvious that the painting job was not undertaken upon the credit of Chesapeake and I am satisfied that the same was true as to the other repairs.

■ Libelant also seeks a decree against Steel, the owner of the barge. However, since Chesapeake was the owner pro hac vice Steel cannot be held personally liable for the repairs ordered by Chesapeake. McCarthy v. Eggers (C.C.) 1 F. 478. Libelant may, therefore, not have a decree in personam against Steel.

### Conclusions of Law.

The Oil Barge U. S. 219 is subject to a maritime lien in the sum of $877.50, in favor of Colonna, representing the cost of necessary repairs furnished to the barge by it.

Colonna is not entitled to a decree in personam against Steel Oil Transport Corporation as respondent.

■Colonna is entitled to a decree for $877.50 with interest from January 18, 1937, against Steel Oil Transport Corporation, as claimant, and Indemnity Insurance Company of North America, its surety, upon the stipulation filed in this case.

A decree may be entered in accordance with this opinion.

## THE U. S. 219.
### No. 11.

District Court, E. D. Pennsylvania.
Nov. 30, 1937.