**ADRIATIC SHIP SUPPLY CO., INC.**

v.

**M/V SHAULA, Lloyds Official No. 7518032, her engines, tackle, deck, etc. in rem,**

**M/V FOMALHAUT, Lloyds Official No. 6422559,**

**M/V HANNATU, Lloyds Official No. 7304352, Fourth Tower Shipping Co., Knud I. Larsen, Wind River Ltd. and Medafrica.**

Civ. A. No. 84–4949.

United States District Court,
E.D. Pennsylvania.

April 25, 1986.

Mark B. Frost, Philadelphia, Pa., for plaintiff.

Edward T. Connelly, Philadelphia, Pa., for defendants M/V SHAULA, Fourth Tower Shipping Co. and Knud I. Larsen.

## OPINION

LUONGO, Chief Judge.

Plaintiff Adriatic Ship Supply Company brought this action alleging that it was never compensated for supplies it furnished to the vessels M/V SHAULA, M/V FOMALHAUT and M/V HANNATU. After a non-jury trial on the claims against defendant M/V SHAULA, *in rem*, and defendants Knud Larsen and Fourth Tower Shipping Company,[1] *in personam*, I have

concluded that plaintiff is entitled to judgment only against M/V SHAULA, for the value of the supplies furnished to it. This opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

Plaintiff's president, Dr. Jugoslav Milutinovich, testified at trial that on four occasions between June 9 and July 25, 1984 he personally delivered supplies consisting of food and deck and engine parts to the M/V SHAULA and M/V FOMALHAUT. Plaintiff's exhibits P–1, P–2 and P–3, introduced at trial, are invoices reflecting that the total due for these supplies is $30,627.11. Of that amount, $11,456.48[2] is for supplies furnished to M/V SHAULA and $19,170.63 for supplies furnished to M/V FOMALHAUT. After its efforts to collect these sums failed, plaintiff initiated this action and had M/V SHAULA seized in the port of Philadelphia. Plaintiff has asserted a maritime lien against M/V SHAULA and contends that Fourth Tower, the owner of M/V SHAULA and M/V FOMALHAUT, is personally liable for the cost of supplies furnished to those vessels. Plaintiff also seeks to recover from Knud Larsen, a company which was allegedly involved in Fourth Tower's formation and the principals of which are also officers and directors of Fourth Tower.

Under 46 U.S.C. § 971, "[a]ny person furnishing ... supplies ... or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem." Defendants have not seriously disputed that plaintiff has a valid maritime lien against M/V SHAULA for the value of supplies furnished to it. Because defend-

1. I do not have jurisdiction to consider the claims against defendant M/V FOMALHAUT, which was never arrested in accordance with the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty or Maritime Claims, or the claims against defendant Medafrica Line, which has never been served. At trial, plaintiff dismissed the claims against the remaining defendants, M/V HANNATU and Wind River, Ltd.

2. Plaintiff's submissions set forth the total amount due as $30,618.11, and the amount due for goods furnished to M/V SHAULA as $11,-447.48. I believe the discrepancy is attributable to plaintiff's mistaken transcription of the amount set forth in the last invoice in Exhibit P–2 as $234.77. The actual amount of the invoice is $243.77.

ants have submitted nothing to contradict plaintiff's evidence as to the value of those supplies, I accept plaintiff's evidence and conclude that plaintiff is entitled to recover $11,456.48 from M/V SHAULA.

Defendants do resist plaintiff's efforts to recover from Fourth Tower and Knud Larsen. Defendants introduced evidence at trial that at the time plaintiff delivered supplies to M/V SHAULA and M/V FOM-ALHAUT the vessels were under a bareboat charter from Fourth Tower to Bassins Shipping Company and under a time charter from Bassins to Medafrica Line. Therefore, defendants contend, plaintiff must look to the charterers for payment rather than to Fourth Tower or Knud Larsen.

■ Defendants are correct that under maritime law "the owners of a vessel are not personally liable for goods or services furnished to the vessel on order of a bare boat charterer of the vessel." *Pierside Terminal Operators, Inc. v. M/V FLORIDI-AN*, 389 F.Supp. 25, 25–26 (E.D.Va.1974). *See also Dowell Division v. Franconia Sea Transport, Ltd.*, 504 F.Supp. 579, 580–81 (S.D.N.Y. 1980), *aff'd mem.*, 659 F.2d 1058 (2d Cir.), *cert. denied*, 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 249 (1981); *The U.S. 219*, 21 F.Supp. 463, 465 (E.D.Pa.1937). Plaintiff, however, claims Fourth Tower and Knud Larsen are liable under principles of agency law. Specifically, Dr. Milutinovich testified at trial that, upon receiving orders from M/V SHAULA and M/V FOMALHAUT, he determined that the vessels were owned by Fourth Tower. He further testified that when he delivered the supplies he was told by the captain of each ship and by a Mr. Magee, representative of Beaufort Navigation, Inc., that Fourth Tower would guarantee payment. Plaintiff asserts that the captains and Magee were acting as the agents of Fourth Tower

and Knud Larsen, that it reasonably relied on their representations, and that it is therefore entitled to recover from Fourth Tower and Knud Larsen.

■ Federal maritime law[3] embraces general principles of agency. *E.g., Cactus Pipe & Supply Co. v. M/V MONTMAR-TRE*, 756 F.2d 1103, 1111 (5th Cir.1985). Plaintiff has not introduced evidence that Fourth Tower or Knud Larsen had given the captains or Magee actual authority to make any guarantees of payment for supplies ordered by the ships' charterers. Nor has plaintiff established the existence of apparent authority. Under general agency principles,

> apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

Restatement (Second) of Agency § 27 (1958). *See also Cactus Pipe & Supply*, 756 F.2d at 1111–12; *Richard A. Cheramie Enterprises v. Mt. Airy Refining Co.*, 708 F.2d 156, 158–59 (5th Cir.1983); *Karavos Compania Naviera S.A. v. Atlantica Export Corp.*, 588 F.2d 1, 10 (2d Cir.1978).

■ Plaintiff has not shown that it relied on any words or conduct of Fourth Tower or Knud Larsen. Its claims against the two companies rest solely on Dr. Milutinovich's testimony that Mr. Magee, whose identity and reason for being on the ships plaintiff nowhere explains, and the ships' captains purported to make guarantees on behalf of the owners. Even if I accept this testimony, the law is clear that an alleged agent's extra-judicial statements cannot establish the fact of agency. *E.g., Cactus*

---

3. In making its arguments, plaintiff has assumed that Pennsylvania agency and corporation law apply. This case, however, was brought pursuant to this court's admiralty jurisdiction and involves alleged breach of maritime contracts. *See Gerard Construction, Inc. v. Motor Vessel VIRGINIA*, 480 F.Supp. 488, 490 (W.D.Pa. 1979) ("Contracts to furnish supplies or accessories to a particular vessel are maritime in na-

ture."); 7A J. Moore, Moore's Federal Practice ¶ .230[4.–5] (2d ed. 1983). Due to the nature of plaintiff's claims, I conclude that federal maritime law rather than state law applies. *See, e.g., Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed. 56 (1961); *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1031–32 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3271, —— L.Ed.2d —— (1986).

*Pipe & Supply,* 756 F.2d at 1111–12; *Karavos Compania,* 588 F.2d at 10. *See also United States v. Bensinger,* 430 F.2d 584, 593 (8th Cir.1970). As the Fifth Circuit held in *West India Industries v. Vance & Sons AMC–Jeep,* 671 F.2d 1384, 1387 (5th Cir.1982), when plaintiff "accepted without further inquiry the bare statements of the ... [alleged agents] to the effect that they represented the ... [principal]," it "acted at its own peril. The mere representation of the fact of agency does not create that relationship and the party to whom such representation has been made bears the burden of inquiring to determine if authority does in fact flow from the alleged principal."

■ I must also reject plaintiff's argument that a "corporate veil" should be pierced and the debts of the charterers attributed to Fourth Tower and Knud Larsen. Arguably, the evidence presented at trial would support a conclusion that Knud Larsen controlled and acted through Fourth Tower, and that Medafrica controlled and acted through Bassins. Plaintiff has presented absolutely no evidence, however, that Knud Larsen or Fourth Tower had any interrelationship with or control over Medafrica or Bassins. There is thus no basis upon which I can hold Knud Larsen or Fourth Tower liable for debts incurred by the charterers.

In conclusion, I hold that plaintiff Adriatic Ship Supply Company has a maritime lien against M/V SHAULA for $11,456.48. Plaintiff also seeks to recover prejudgment interest, the costs of arresting M/V SHAULA, and attorney's fees. I will award plaintiff prejudgment interest from June 15, 1984 (the date of plaintiff's last delivery to M/V SHAULA) to April 25, 1986 at an annual rate of 9%,[4] compounded annually, for a total of $2001.00. Plaintiff is also entitled to recover the costs of arresting the ship, which, according to plaintiff's Exhibit P–9, total $503.97. I will not, however, grant plaintiff's request for attorney's fees. Plaintiff has prevailed only partially and, in any event, I cannot con-

clude that the defendants have acted in bad faith. *See, e.g., Whorton v. Home Insurance Co.,* 724 F.2d 427, 431 (4th Cir.1984); *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.,* 598 F.Supp. 45, 48 (D.V.I.1984), *aff'd mem.,* 760 F.2d 257 (3d Cir.1985).

Judgment in the amount of $13,961.45 will be entered in favor of plaintiff and against M/V SHAULA. Because plaintiff has not established that it is entitled to recover from defendants Fourth Tower or Knud Larsen *in personam,* judgment will be entered in favor of those defendants and against plaintiff.

---

4. Nine percent represents an average of the applicable postjudgment interest rates (which, under 28 U.S.C. § 1961, are based on fifty-two

week United States Treasury bill rates) from June 15, 1984 to April 25, 1986.