# UNITED STATES of America, Plaintiff,

v.

# CHEVRON, U.S.A. INC., Defendant.

## Civ. A. No. 88–6681.

United States District Court,
E.D. Pennsylvania.

Sept. 27, 1990.

Susan Dein Bricklin, U.S. Attorney's Office, Philadelphia, Pa., for plaintiff.

Philip J. Katauskas, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the Court is Plaintiff United States of America's ("EPA") Motion for Partial Summary Judgment. Before addressing the substantive issues of the motion, it is necessary to consider Defendant Chevron, U.S.A. Inc.'s ("Chevron") objection to the EPA's standing in this matter, as well as their numerous affirmative defenses.

### I. Preliminary Issues

#### A. Standing

■ Chevron first claims that the EPA lacks the standing to bring suit against Chevron. This assertion is based on an erroneous interpretation of the regulation giving the Philadelphia Department of Health, Air Management Division ("AMS") its power to enforce the requirements of the Clean Air Act (the "Act"). Chevron maintains that the EPA delegated all authority to enforce the Act to the AMS, except in two distinct situations that are enumerated in the subsequent paragraph. The pertinent provisions read as follows:

> 4. Enforcement of the NSPS and NESHAP [benzene standards] regulations in Philadelphia will be the *primary* responsibility of the Department [AMS]. Pursuant to Sections 111(c)(2) and 112(d)(2) of the Clean Air Act 42 U.S.C. 7411(c)(2) and 7412(d)(2), U.S. EPA *retains authority to enforce* any NSPS or NESHAP standard *whenever such enforcement is deemed by the U.S. EPA to be necessary to carry out the purposes of the Clean Air Act.*
>
> Where the Department determines that such enforcement is not feasible and so notifies EPA, or where the Department acts in a manner inconsistent with the terms of this delegation, EPA will exercise its concurrent enforcement authority . . .

Delegation Letter, 50 Fed.Reg. 34,143 (1985) (emphasis added).

Chevron's interpretation is clearly unwarranted by these delegation provisions.

The EPA has reserved to itself the power in paragraph one to continue enforcement of the Act where it sees fit. The situations discussed in the second paragraph are only those where the EPA *must* act to enforce the Act. However, that paragraph contains no language limiting the EPA's powers to *only* those situations. Therefore, we find that the EPA has the power to act, despite the absence of or different action on the part of the AMS, when it deems necessary "to carry out the purposes of the Clean Air Act." [1]

### B. Waiver of EPA's Right to Sue Through AMS's Execution of a General Release

Chevron's basis for this claim is that the AMS and Chevron negotiated an agreement that released Chevron from liability for alleged violations that occurred before May 28, 1987 in return for the payment of a substantial fine. Chevron further asserts that the EPA is bound to abide by this release because of: 1) an agency relationship between the EPA and the AMS; 2) the apparent authority granted to the AMS by the EPA; or 3) the inherent authority doctrine.

Chevron contends that an agency relationship exists here because the EPA delegated its full power of enforcement to the AMS. However, as discussed *supra*, such an interpretation of the delegation is incorrect. The EPA left itself the power to supervise and take corrective measures for any actions taken by the AMS. Therefore, it was unreasonable for Chevron to think that because the General Release contained the language that it was binding on the "delegators" of the AMS's power, that the EPA could be so bound without its *own* clear affirmation of such intent.

Furthermore, the EPA did not convey to Chevron that the AMS had apparent authority to bind the EPA without its explicit consent. Apparent authority is "cre-

ated by the written or spoken words or any other conduct of the principal which reasonably cause an outsider to believe that the principal consents to have the act done on its behalf by the agent." Defendant's Memorandum of Law, at 25, *citing* Restatement (Second) of Agency, §§ 8, 27 (1958). Chevron's theory is that because the EPA delegated to the AMS authority to enforce the Act, the EPA gave the AMS apparent authority to bind it in agreements. However, the EPA's reservation of the power to supervise the AMS's actions belies any argument on Chevron's part that the AMS had complete power to bind the EPA without the EPA's express consent. As former Chief Judge Luongo stated, "The mere representation of the fact of agency does not create that relationship and the party to whom such representation has been made bears the burden of inquiring to determine if authority does in fact flow from the alleged principal." *Adriatic Ship Supply Co. v. M/V Shaula,* 632 F.Supp. 1573, 1576 (E.D.Pa.1986). Thus, Chevron was not entitled to rely on its interpretation of the delegation regulation to assume the AMS had the authority to bind the EPA; Chevron had the duty to ask the EPA itself if it agreed to the General Release.

Finally, Chevron's inherent authority argument may be disposed of through the same analysis. Chevron cites the Restatement (Second) of Agency, § 161 (1958) as supporting the idea that the EPA has inherently granted authority to the AMS through its grant of limited agency. The pertinent part of the Restatement subjects a principal to liability for the acts of the agent, even if the principal forbids these acts, if "the other party reasonably believes that the agent is authorized to do them." Restatement (Second) of Agency, § 161 (1958). However, as discussed *supra*, it was unreasonable for Chevron to assume that the AMS had the authority to bind the EPA to the terms of a general

---

1. Even under Chevron's narrow reading of these paragraphs, the EPA could be considered to have the power to enforce the Act. The second situation in which the EPA may provide concurrent enforcement is if it determines that the AMS is acting inconsistently with its mandate. Here, the EPA must have determined that the AMS was not acting consistently with its mandate if the EPA decided to bring a separate enforcement suit against Chevron.

release when the delegation terms reserving supervisory powers are so clear, and checking for such authority with the EPA was not difficult. Therefore, the EPA is not bound by the terms of the General Release, as it was not a signatory to the document and the AMS had no authority to bind the EPA. Furthermore, Chevron's arguments that res judicata and collateral estoppel apply to the EPA's present actions are ineffective because the General Release is not binding on the EPA.

### C. Waiver of the EPA's Right to Sue for Alleged Violations Prior to May 14, 1985 Through Withdrawal of a Compliance Order

In March of 1985, the EPA issued a compliance order to Chevron, ordering Chevron to complete construction of a safety relief valve containment system connected to a flare. However, the EPA soon withdrew this order when it determined that Chevron was in compliance with regard to the containment system. Chevron now claims that the withdrawal of this limited compliance order indicates that Chevron was, at that time, in compliance with all the benzene regulations. The original compliance order, however, clearly states that it was only in reference to a system that the EPA is not citing here as an alleged violation. Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 23, at 2 of Order. The withdrawal of the order only refers to *that* order. Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 26, at 1. Therefore, the withdrawal of this compliance order has no effect on this case.

### D. Waiver of the EPA's Right to Sue Through Laches

■ Chevron's fifth affirmative defense is that the EPA waived its right to bring suit against Chevron because it waited four years from the date of the alleged violations. The EPA argues that laches is an equitable defense that cannot be used against the government. Although the question does not seem to be resolved definitively, *see, e.g., Costello v. U.S.*, 365

U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1960), in this situation, the defense of laches should certainly not be applied to the government. The Court in *Costello* said that generally "laches is not a defense against the sovereign [because of] the principle ... 'to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers.'" *Id.* at 281, 81 S.Ct. at 543 (citing *U.S. v. Hoar*, 26 Fed.Cas. 329,330 (No. 15,373) (Story, J.). In this instance, the EPA is enforcing the Clean Air Act, which is of paramount importance to the American citizenry. We will not decide here the question of whether a delay of filing suit of four years is sufficient to plead a defense of laches. We do think, however, that the public should not be punished for any alleged negligence on the part of EPA enforcement. Therefore, the defense of laches is not applicable in this case.

### E. Waiver of the EPA's Right to Sue Through Equitable Estoppel

■ Chevron's final affirmative defense is that the EPA should be estopped from filing suit because: 1) its agent made representations during an inspection in June, 1986, that led Chevron to believe it was in compliance; and 2) the lack of any notice from the EPA in four years led it to believe it was in compliance. For reasons similar to those in the discussion of the laches defense, Chevron will not be able to avail itself of the equitable estoppel defense.

The elements of equitable estoppel are: 1) an affirmative misrepresentation of fact by a party who has reason to believe the other party will rely on it; and 2) reasonable detrimental reliance by the other party on the misrepresentation. *See Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1983). Thus, the fact that the EPA did nothing for four years to enforce the regulations against Chevron would not be considered an affirmative misrepresentation and does not satisfy the first requirement of the equitable estoppel defense.

The alleged misrepresentations by the inspector do not seem to be sufficient to satisfy the requirements of the defense either. The inspector allegedly said at the end of the inspection that Chevron " 'seem[s] to be better than most of the installations we have seen so far.' " Deposition of Kenneth R. Przeworski, Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 14, at 172. However, Mr. Przeworski emphasized that the comment was clearly "unofficial." *Id.* Furthermore, a designs engineer present at that inspection stated that Chevron did not request any *official* reports regarding the inspection and did not change its operations because of the inspection. Deposition of Roger J. Schumacher, Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 15, at 374.

This statement by the inspector, then, does not satisfy the requirements for establishing an equitable estoppel defense. First, the statement was not that Chevron was in compliance, but only that Chevron's plant was better than most. Thus, it was not a misrepresentation of fact because it was not a misrepresentation and the statement was only an opinion. Second, Chevron's alleged reliance was unreasonable because six months after the inspection, the AMS cited Chevron for major regulation violations. At that point, Chevron had a good indication that it may not have been in compliance, despite any statements from the inspector.

Whether Chevron reasonably relied on the alleged misrepresentations of the EPA inspectors, however, is a moot point, because the doctrine of equitable estoppel should not be applied to the government. In the Supreme Court reversal of the case cited by Chevron to support its estoppel argument, the Court clearly articulates why it would be rare for equitable estoppel to be applied to the government:

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.

*Heckler,* 467 U.S. at 60, 104 S.Ct. at 2224.

In the *Heckler* case, the government's agent on five separate occasions advised a non-profit hospital that certain costs were reimbursable under Medicare, and for three years reimbursed the hospital for those costs. Then, the government reinvestigated the determination and decided that the hospital was not entitled to the monies. *See id.* at 56–61, 104 S.Ct. at 2221–2224. The Court held that, despite the fact that recouping these reimbursements would send the hospital into bankruptcy, the hospital had not detrimentally relied on the affirmative misrepresentations of the government's agent. The Court stated, "Its detriment is the inability to retain money that it should never have received in the first place. Thus, this is not a case in which the respondent has lost any legal right, either vested or contingent, or suffered any adverse change in its status." *Id.* at 61–62, 104 S.Ct. at 2225. A similar situation is present here. Chevron would have allegedly been in violation of the benzene regulations and been responsible for subsequent compliance whether or not Chevron was so informed by the EPA. Its only detriment is that Chevron may have to correct the alleged violations now instead of when they were allegedly instituted. Furthermore, this case is clearly one where the interests of the citizenry outweigh the costs to Chevron. Even if Chevron had been entitled to rely on the alleged misrepresentation by the inspector and the EPA's delay in prosecution, the health of the public and its interest in a pollution-free environment should not be sacrificed because these actions work a potential hardship on Chevron. Therefore, following well-established law, we decline to estop the EPA from filing suit against Chevron.

## II. Substantive Issues

The EPA has moved for summary judgment with respect to several facts that it claims are undisputed. We will grant, however, summary judgment only with re-

spect to two discrete issues. First, during the June, 1986 inspection, the inspectors found twenty unmarked pieces of equipment. Chevron agrees that these are violations and only argues in opposition that they were immediately remedied and that thousands of pieces of equipment were correctly marked. The violations still remain violations and therefore, we find that Chevron failed to have marked correctly 20 pieces of equipment in benzene service in June, 1986.

Second, during the June 19, 1986 inspection, the inspectors found that six open-ended valves were not properly equipped. This failure is also a violation of the benzene regulations. Chevron once again did not dispute this finding, but made the same arguments listed *supra.* Therefore, we find that Chevron failed to have equipped properly six open-ended valves on the June 19, 1986 inspection.

Summary judgment will not be granted with respect to the remaining issues. Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This court is required, in resolving a motion for summary judgment pursuant to Rule 56, to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the evidence of the nonmoving party is to be believed, and the district court must draw all reasonable inferences in the nonmovant's favor. *Id.* at 255, 106 S.Ct. at 2513. Furthermore, while the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Two of Chevron's alleged failures were the failure to repair 511 leaks of benzene and the failure to explain unrepaired leaks. The benzene regulations provide for exceptions to the repair requirement, if, for example, they are technically infeasible. The EPA wishes us to hold that because Chevron has not proffered any explanations as to the feasibility of such repairs, we should infer that Chevron has no excuse to compliance. Such inferences are fact issues for the fact-finder, not matters of law capable of being decided by this Court. Therefore, summary judgment is denied as to these claims.

The next alleged failure was Chevron's failure to commence monthly monitoring of 985 unreported pumps, failure to commence weekly visual inspections of ten unreported pumps, and the failure to monitor 2635 reported pumps and valves. Once again, to grant summary judgment on these facts, the EPA wishes us to infer facts. The EPA claims that because none of Chevron's reports make reference to such monitoring, that must mean that Chevron was not monitoring the pumps. We are not permitted to make this inference and summary judgment is denied on this claim.

A third set of alleged failures are: 1) the failure to mark 1057 pumps and valves; and 2) the failure to report or mark certain equipment and provide information as to that equipment. Chevron correctly points out that a question of fact exists as to when the equipment was purchased and therefore, as to when it should have been marked or reported. Furthermore, a question of fact remains as to whether this equipment was actually in benzene service. Thus, we may not grant the summary judgment motion with respect to these issues.

The next set of claims deal with the reports that the benzene regulations require benzene users to make. The EPA

alleges that Chevron's Source Report had insufficient information. However, Chevron points to several issues that raise questions of fact rendering this decision incapable of being made here. For example, the EPA requires certain information that Chevron contends is contained in a schematic at the end of the report. Therefore, we may not grant summary judgment in reference to the Source Report.

The EPA also claims that the initial report was deficient. Chevron makes two arguments in response: 1) the cover letter and the report contained all the information necessary; or in the alternative, 2) the EPA granted an extension for compliance and then never set a date for the report to be filed. Both of these issues are determinations that should be for the fact-finder. We will not dispose of them here.

The final reports in question are the semiannual reports. The EPA claims that they did not contain all of the required information. Chevron, however, points to many sections of each report that it contends has the information the EPA claims is missing. Whether this information is sufficient should be determined by the fact-finder and therefore summary judgment is denied here as well.

Finally, the EPA makes the general claim that Chevron failed to maintain and operate the plant in a manner consistent with good air pollution control practice. To support this claim, the EPA cites all the previously alleged violations. Since fact issues exist as to those violations, this claim has unresolved fact issues as well. Thus, summary judgment is denied with respect to this claim.

### ORDER

AND NOW, this 27th day of September, 1990, in consideration of Plaintiff's Motion for Partial Summary Judgment and Defendant's Response thereto, it is hereby ORDERED that Defendant has violated the national emission standard for benzene (the "benzene NESHAP"), promulgated under the Clean Air Act, 42 U.S.C. § 7401 *et seq.* by:

1) failing to have marked on the dates of EPA inspections in June 1986 twenty pieces of equipment in benzene service; and

2) failing to have equipped six open-ended valves or lines subject to the benzene NESHAP with a cap, blind flange, plug, or a second valve, on June 19, 1986, when EPA inspected the Chevron refinery.

As to the other claims for summary judgment, the motion is DENIED in conjunction to the memorandum of law attached hereto. We further find that Plaintiff has standing to bring this suit and that the affirmative defenses offered by Defendant are DENIED.